IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WALLEY KEVIN RISLEY                                                                                              PLAINTIFF

      VS.                                            Civil No. 3:14-cv-03117

CAROLYN W. COLVIN                                                                                              DEFENDANT
Acting Commissioner, Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Walley Kevin Risley, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed an application for SSI on May 22, 2012, alleging disability since May 14, 2012, due to alleged physical and mental conditions, including "heart problems, feet problems, depression and anxiety, told [he] would lose [his] feet in a few years, back problems, numbness in hands and feet, [and] bipolar." (Tr. 181) His application was denied initially on July 16, 2012 and upon reconsideration on October 8, 2012. (Tr. 103-106, 110-112) Subsequently, Plaintiff requested an administrative hearing (Tr. 113-115), and the hearing was held on March 21, 2013, before the Hon. Glenn Neal, Administrative Law Judge (ALJ). (Tr. 30-95) Plaintiff was

present and represented by his attorney, Frederick S. Spencer. (Tr. 32) Plaintiff and a Vocational Expert ("VE"), Jim B. Spragins, testified at the hearing. (Tr. 32-75, 86-87, 88-93) Ms. Loye Diane Felix and Mr. Duane Meron Felix also testified. (Tr. 76-85)

Plaintiff, born in 1968, was 45 years old at the time of the hearing. (Tr. 34) He completed only one-half of his 9th grade year before he was expelled for an altercation with a teacher. (Tr. 34-35) He worked as a custodian, landscaper, and a plastics injection molding machine operator. Plaintiff stopped working on May 14, 2012 because of his heart issues. (Tr. 44-47)

By written Decision dated September 26, 2013, the ALJ found Plaintiff had the following severe impairments: coronary artery disease status post myocardial infarction and stenting, peripheral vascular disease of the lower extremity, history of hernia repair, attention deficit hyperactivity disorder (ADHD), major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia and polysubstance abuse/dependence. (Tr. 14) After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairment did not meet or equal the level of severity of any impairment in the Listing of Impairments. (Tr. 14) The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except as follows:

> "[claimant] must avoid concentrated exposure to hazards, including no driving as part of work. He can further do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved and the supervision required is simple, direct and concrete." (Tr. 17)

The ALJ further determined that Plaintiff was unable to perform any past relevant work; was a younger individual, age 18-44, on the date his application was filed; was a younger individual, age 45-49, on the date the hearing was held; had a limited education and was able to communicate in English; and, that transferability of job skills was not an issue as Plaintiff's past relevant work was unskilled. (Tr. 23-24) Considering Plaintiff's age, education, work experience,

2

and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24) With the assistance of a vocational expert, the ALJ determined Plaintiff was capable of making a successful adjustment to other work and could perform the requirements of representative occupations such as a small production machine operator (DOT#689.585-018), of which there were 500,000 jobs in the national economy and 4,000 jobs in Arkansas, and a small product assembler (DOT#713.687-018), of which there were 203,000 jobs in the national economy and 4,000 jobs in Arkansas. (Tr. 24) The ALJ then concluded Plaintiff had not been under a disability as defined by the Act since the date his application for SSI was filed on May 22, 2012. (Tr. 25)

Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 6), which request was denied on October 31, 2014. (Tr. 1-4) Plaintiff then filed this action on December 10, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 6) Both parties have filed appeal briefs (Docs. 9, 10), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**III. Discussion**

Plaintiff argues on appeal that the ALJ did not evaluate his mental impairments consistent with the requirements of the regulations by simply choosing to rely on the assessment of Dr. Efird and non-examining physicians instead of the assessment of Dr. Brown, as both examiners came to drastically different conclusions and it is clearly unlikely that either provides a good measure of Plaintiff's mental functioning for even basic work activities. (Doc. 9, pp. 8-12) Plaintiff also appears to argue that the ALJ erred in his credibility analysis. (Doc. 9, pp. 8-12) The Commissioner counters that substantial evidence supports the ALJ's non-exertional RFC determination. (Doc. 10, pp. 5-11) The Commissioner also points out that Plaintiff has waived any other issues related to the ALJ's findings. (Doc. 10, p. 1) *See Walton .v Astrue*, 334 Fed.Appx. 38, 2009 WL 3255501, 1 (8th Cir. Oct. 13, 2009), *citing Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (claims not raised in the opening brief are waived).

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

**A. ALJ's RFC Determination and Conflicting Medical Opinions**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."

*Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id.*

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id.* at § 416.927(c)(2) (emphasis added).

In his opinion, the ALJ considered and discussed the evidence of record as a whole. In addressing the mental evaluations, the ALJ determined that the Psychological Evaluation for Disability by Philip Brown, Ph.D, was to be given little weight. (Tr. 22) In making that determination, the ALJ noted that while Dr. Brown found that Plaintiff was quite limited due to his mental impairments, much of Dr. Brown's report was based on Plaintiff's subjective complaints. (Tr. 22) *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (concluding the ALJ properly discounted a doctor's report, in part, because it "cited only limitations based on [the claimant's] subjective complaints, not his own objective findings"). The ALJ also noted the inconsistencies between the medical records and Plaintiff's statement to Dr. Brown that he had been a heavy drinker in his teenage years and Dr. Brown's belief that Plaintiff's drug and alcohol use did not contribute to Plaintiff's symptoms.[1] (Tr. 22) "Because [Dr. Brown's] determination contradicted other objective evidence in the record, the ALJ's decision to give less weight to [Dr. Brown's] determination was reasonable." *Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (citing *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) ("The ALJ noted the conflicting opinions regarding [the claimant's] ability to perform work activities and chose not to give controlling weight to [the treating psychiatrist's] opinion."). In this matter, the record revealed that Plaintiff had a history of very little mental health treatment, including only one inpatient treatment experience at the Arkansas State Hospital when he was in his twenties, and subsequent

---

[1] Medical records from 2011 through 2013 consistently showed that Plaintiff, despite warnings from his treating physicians about the impact on his conditions, continued to abuse alcohol and at times drugs (specifically marijuana) and continued tobacco usage (cigarettes). (Tr. 296-297, 299, 302, 304, 311-312, 336-337, 339-340, 366, 356-57, 368, 372, 375, 380, 403, 410, 441-442, 520, 628-629, 632, 661, 680, 697)

outpatient treatment for mental health services in other states. (Tr. 468) Plaintiff also shared with Dr. Efird that he was currently complying with his prescription medication instructions for his mental health conditions; however, he was not taking advantage of any formal mental health treatment program despite physicians at Baxter Regional Medical Center providing lists of outpatient counseling services where Plaintiff's inability to pay was not an issue. (Tr. 68-69, 372)

The Mental Diagnostic Evaluation performed by Terry L. Efird, PhD, consisted of cognitive testing, and his conclusions did not rely solely on Plaintiff's subjective complaints. (Tr. 22-23) Notably, Dr. Efird did not find Plaintiff to be as limited as alleged in that Plaintiff could adequately perform most activities of daily living and could communicate and interact in a reasonably socially adequate, intelligible and effective manner. Dr. Efird opined that Plaintiff had the capacity to perform the basic cognitive tasks required for basic work-like activities, could track and respond adequately for the purposes of the evaluation, and showed no remarkable problems with persistence. (Tr. 22-23)

A review of the ALJ's decision shows the ALJ evaluated all of the evidence of record and provided good reasons for the weight accorded to Dr. Efird's opinion expressed in his July 9, 2012 Mental Diagnostic Evaluation and that of Kevin Santulli in his July 14, 2012 Psychiatric Review Technique and Mental RFC (affirmed by Jon Etienne Mourot, PhD).[2] Where, as here, there are conflicts in the medical evidence, it is the duty of the Commissioner to resolve such conflicts. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012); *Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997); *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). For the reasons set out

---

[2] In rendering his assessment, Dr. Santulli relied on all medical evidence in existence at the time of the review, including Dr. Efird's Mental Diagnostic Evaluation. (Tr. 492)

above, substantial evidence on the record as whole supports the ALJ's determination to provide little weight to Dr. Brown's opinion evidence.

### B. Subjective Complaints and Credibility Analysis

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors. A review of the record reveals that during the relevant time period Plaintiff, despite his testimony that he was unable to concentrate, was able to go fishing once a week and watch television. (Tr. 60) In Plaintiff's Function Report, he stated that while he may need reminders to groom and take medication, he had no problems with personal care, preparing his own meals, doing his laundry and household cleaning, driving, going out alone, shopping in stores, and paying bills and counting change. (Tr. 203-210) He also professed to get along well with authority figures, follow spoken instructions adequately, and had not been laid off or fired from a job because of difficulty getting along with others. (Tr. 208-208)

In making a credibility determination, the ALJ also pointed out that Plaintiff failed to follow the recommendations of his treating and examining physicians after being treated for acute myocardial infarctions and stenting of coronary arteries in that Plaintiff did not take prescribed medications, continued to smoke cigarettes and marijuana and drink alcohol, and he left the hospital against medical advice. *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); 20 C.F.R. § 416.930(b).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of February, 2016.

/s/ Mark E. Ford
HONORABLE MARK. E. FORD
UNITED STATES MAGISTRATE JUDGE